IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| JOHN PATRICK WALLACE, #1621931 | § | |
| VS. | § | CIVIL ACTION NO. 6:12cv187 |
| JOHN A. RUPERT, ET AL. | § | |

MEMORANDUM OPINION AND
ORDER OF DISMISSAL

Plaintiff John Patrick Wallace, a prisoner previously confined at the Coffield Unit of the Texas prison system, proceeding *pro se* and *in forma pauperis*, filed this civil rights lawsuit pursuant to 42 U.S.C. § 1983. The complaint was transferred to the undersigned with the consent of the parties pursuant to 28 U.S.C. § 636(c).

Facts of the Case

The original complaint was filed on March 19, 2012. On August 9, 2012, an evidentiary hearing was conducted, in accordance with *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985), to consider the Plaintiff's claims. The hearing was conducted "to dig beneath the conclusional allegations; to reduce the level of abstraction upon which the claims rest; to ascertain exactly what scenario the prisoner claims occurred, as well as the legal basis for the claim." *Id.* at 180. A *Spears* hearing is "in the nature of a motion for more definite statement." *Id.* at 180-181. The Plaintiff testified as to the factual basis of his claims. Regional Grievance Supervisor Laurie Parker, Assistant Warden William Motal and Nurse Kathy Gray attended the hearing and testified under oath about prison policies and information contained in the Plaintiff's prison records.

The Plaintiff testified that he was threatened and assaulted while confined at the Coffield Unit in 2011. He notified the Defendants about the threats and assaults, but they did not take any steps to protect him. He testified that his troubles began while he was working as a support service inmate ("SSI") in administrative segregation. He was ridiculed and threatened by inmates confined there. He noted that he is rather small and inmates threatened to sexually assault him. The Plaintiff gave the Court permission to examine his prison records. Medical records reveal that he was 5'9" tall and weighed approximately 139 pounds in 2011. He was 24 years old during the latter half of 2011. The Plaintiff stressed that he told prison officials about the threats, but they failed to protect him.

The Plaintiff testified that he was assaulted on several occasions. The first time was when he was slapped on the back of the head. He did not consider the assault to be serious and did not report it. Major De la Rosa subsequently heard about the incident and asked him if he was afraid. The Plaintiff testified that he told him "no" since he did not consider the matter to be serious.

On another occasion, the Plaintiff found two Benadryl tablets while cleaning. He placed the pills in his pocket and intended to turn them in. However, before he turned them in, he was searched by Officer Avery, who discovered the pills and contacted ranking officers. Lieutenants Karnes and Crist came on the scene. The Plaintiff received a disciplinary case for possession of contraband. He lost his SSI job due to the incident. During the incident, he had an altercation with Lt. Karnes. The Plaintiff explained that he was leaning against the wall, and Lt. Karnes took offense to his casual attitude about the situation. Lt. Karnes shouted at him and threatened him. Lt. Karnes subsequently investigated the Plaintiff's complaints that his life was in danger, but the Plaintiff felt that Lt. Karnes did not actually investigate his claims.

The Plaintiff was given a new housing assignment and a job in the field force as a result of losing his SSI job. The Plaintiff told Lt. Woodard that he felt like he would have problems with people in his new housing area. Lt. Woodard told him to give it a chance. On the following day, someone struck the Plaintiff from behind while he was standing in the chow line. He did not know who struck him. He complained to Lt. Woodard, who began an offender protection investigation ("OPI"). The Plaintiff was moved to a transient cell during the investigation. The Plaintiff testified that Lt. Woodard did everything that he was supposed to do, but relief was denied.

While confined in the transient cell, which was located in administrative segregation, the Plaintiff was threatened by two inmates confined there. He was threatened because he had not provided them with extra food trays while he worked in administrative segregation as a SSI. The Plaintiff reported the threats, which led to another unsuccessful OPI.

While the Plaintiff was confined on G-Wing, an inmate threw hot water with urine in it on him. During this period of time, he was refusing housing assignments because he felt that his life was in danger. Another OPI was conducted because the substance was thrown on him. Lt. Karnes was responsible for conducting the investigation. The Plaintiff was placed in a transient cell for a few hours. He again testified that he does not believe that Lt. Karnes actually conducted an investigation.

Two homosexual inmates sexually solicited him on another occasion. The Plaintiff testified that he then refused his housing assignment and received another disciplinary case for refusing housing. He was found guilty and reassigned to a Loss of Privileges ("LOP") cell. He complained that Lt. Karnes gave him the disciplinary case. The Plaintiff was assaulted on two other occasions, which led to his transfer to the Hightower Unit on December 27, 2011.

The Plaintiff was vague as to when and how he was threatened and assaulted. He agreed for the Court to review his records in order to sort out all of these facts. Several OPIs were included in the prison records provided by the prison system. The earliest OPI provided was dated August 31, 2011. The Plaintiff reported to Sgt. C. Satterwhite that he had been threatened by inmates F. Salazar and T. Brigham in May 2011. It was noted that Brigham had already been paroled by the time of the investigation. It was further noted that neither Salazar nor Brigham were disciplined because the incident was reported six months after the occurrence of the incident.

Lt. Matthews conducted an OPI two days later on September 2, 2011. The Plaintiff was placed in a transient cell during the investigation. The Plaintiff reported that inmate Redman had threatened him. Also, his cell mate was telling people that he was a child molester and a snitch. Redman was interviewed. He denied that he made any threats, but he agreed that inmates told the Plaintiff that he needed to get off of the wing. These inmates could not be identified. Although there was some evidence to support the Plaintiff's claims due to Redman's comments, Lt. Matthews found that the Plaintiff's claims could not otherwise be substantiated. Major Atchison signed off on the findings on September 6, 2011. The Plaintiff included Atchison as a defendant for denying him protection.

Lt. Avelar conducted an OPI on October 6, 2011. It was noted that the Plaintiff was already in a transient cell. The Plaintiff reported that inmate Salazar had threatened to have someone harm him. Relief was denied because the Plaintiff could not provide any evidence to corroborate any of his claims. Major Atchinson signed off on the findings on October 7, 2011.

Lt. Avelar conducted another OPI on November 7, 2011. The Plaintiff was placed in a transient cell during the investigation. The Plaintiff asserted that his life was in danger because inmate Salazar had spread information about him. It was noted in the report that Salazar had been transferred

4

off of the Coffield Unit. The Plaintiff also complained that inmate Willis was spreading rumors about him being a snitch. Willis had threatened him. The Plaintiff listed the names of several inmates who had allegedly heard Willis threaten him. Lt. Avelar talked to these inmates, who denied that they had heard anyone threaten the Plaintiff. The OPI was denied because the Plaintiff's claims could not be substantiated. Major Atchison signed off on the recommendation to deny relief on November 9, 2011.

Lt. Matthews conducted another OPI on December 15, 2011. The Plaintiff was placed in a transient cell during the investigation. The Plaintiff stated that he was assaulted by three inmates while he attempted to leave a day room on December 14, 2011. More specifically, he was clotheslined. He identified two of the assailants, who were Christopher Mack and Alonzo Fuller. Lt. Matthews was able to substantiate the Plaintiff's claims, thus he found that the Plaintiff should be transferred from the Coffield Unit. The Plaintiff was transferred to the Hightower Unit on December 27, 2011.

The records also included two disciplinary cases where Lt. Karnes had filed offense reports because the Plaintiff failed to obey orders to accept a housing assignment. The first incident occurred on August 19, 2011 and was filed as Case Number 2011036338. The Plaintiff was found guilty on August 24, 2011. The punishment imposed included the loss of 30 days of good time. The second incident occurred on October 17, 2011 and was filed in Case Number 20120048521. The Plaintiff was found guilty on October 20, 2011. He did not lose any good time on this occasion. It is noted that the Plaintiff acknowledged that he routinely refused housing assignments, received disciplinary cases for failing to accept housing assignments and was eventually assigned to LOP due to such refusals.

<u>Discussion and Analysis</u>

The Eighth Amendment affords prisoners protection against injury at the hands of other inmates. *Smith v. Wade*, 461 U.S. 30 (1983); *Johnston v. Lucas*, 786 F.2d 1254, 1259 (5th Cir. 1986).

"It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Instead, the standard to employ is whether prison officials were "deliberately indifferent" to the safety needs of an inmate. *Id.*; *Cantu v. Jones*, 293 F.3d 839, 844 (5th Cir. 2002). "[A] prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety; . . . the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. A prison official, however, may avoid liability if he "responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844. A prisoner does not have a basis for a civil rights claim for failure to protect simply because he disagrees with the classification decision made by classification officials. *Neals v. Norwood*, 59 F.3d 530 (5th Cir. 1995).

In the present case, the Plaintiff's claims that his life was in danger resulted in several OPIs. Officials investigated his claims on each occasion. He was routinely placed in transient cells by himself while the investigations were conducted. Except for the last OPI conducted by Lt. Matthews in December 2011, the Plaintiff's claims could not be substantiated and relief was denied. On the other hand, when the Plaintiff's claims were substantiated by Lt. Matthews, he was transferred from the Coffield Unit based on the recommendation of Lt. Matthews. The supervisory officers who conducted the investigations acted reasonably in placing him in transient cells during the investigations and looking into his claims. They were not deliberately indifferent to his claims. The Plaintiff does not have a basis for a potentially meritorious civil rights lawsuit simply because he disagrees with the findings made as a result of the earlier investigations and was subsequently assaulted by inmates. The Plaintiff also testified that he was regularly moved to new cells and wings after he complained.

6

Moreover, inmate Salazar was moved off of the Coffield Unit. Officials did not simply ignore and disregard his complaints about his safety. The facts as alleged and developed do not support a potentially meritorious claim based on deliberate indifference.

In addition to the failure to protect claim, the Plaintiff also complained that Lt. Karnes filed the disciplinary case against him for refusing housing in Case Number 20110363338. He characterized the case as false, although he admitted that he, in fact, refused housing assignments. The claim is not appropriately before this Court. In his complaint, the Plaintiff stated that he wants his time earning status restored, the disciplinary case removed from his record, and compensatory and punitive damages. Because the Plaintiff seeks damages and the restoration of lost good time credits as a result of the prison disciplinary case, he cannot bring a civil rights lawsuit about the disciplinary case unless he first shows that the result was reversed on direct appeal, expunged by executive order, declared invalid by an authorized state tribunal, or called into question by a federal court's issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. *See Edwards v. Balisok*, 520 U.S. 641, 648 (1997). The Plaintiff has not shown that he has been able to get his disciplinary case reversed, expunged or otherwise declared invalid, thus he has not shown that he has a basis for a potentially meritorious civil rights lawsuit at this time about Case Number 20110363338.

With respect to Case Number 20120048521, the Plaintiff's punishment did not include the loss of good time. A prisoner does not have a basis for a potentially meritorious civil rights lawsuit about a disciplinary case unless he lost good time and is eligible for release on mandatory supervision. *Madison v. Parker*, 104 F.3d 765, 769 (5th Cir. 1997). The Plaintiff's prison records reveal that he is eligible for release on mandatory supervision, but he does not have a basis for a potentially meritorious civil rights lawsuit since he did not lose any good time in this disciplinary case.

The Plaintiff also complained that Lt. Karnes threatened him. Verbal harassment, without more, does not amount to a constitutional violation. *Bender v. Brumley*, 1 F.3d 271, 274 n.4 (5th Cir. 1993). The Fifth Circuit provided the following analysis in response to complaints about threats made by officials:

> [I]n the Eighth Amendment context, our circuit has recognized as a general rule that "mere threatening language and gestures of a custodial officer[r] do not, even if true, amount to constitutional violations". *McFadden*, 713 F.2d at 146 (quoting *Coyle v. Hughs*, 436 F. Supp. 591, 593 (W.D. Okla. 1977); *accord Johnson v. Glick*, 481 F.2d 1028, 1033 n.7 (2d Cir.) (the use of words, no matter how violent, does not comprise a § 1983 violation), *cert. denied*, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973); *Collins v. Cundy*, 603 F.2d 825, 827 (10th Cir. 1979) (verbal harassment consisting of sheriff's threat to "hang" prisoner does not state constitutional deprivation under § 1983).

*Robertson v. Plano City of Texas*, 70 F.3d 21, 24 (5th Cir. 1995). The Plaintiff has not pled facts providing for an actionable claim against Lt. Karnes.

Finally, it is noted that the following people were sued because of their supervisory roles: Warden John A. Rupert, Assistant Warden Wisener, Assistant Warden Dogles and Major Edwin Atchinson. In order to successfully plead a cause of action in a civil rights case, a plaintiff must ordinarily articulate a set of facts that illustrates the defendant's participation in the alleged wrong. *Jacquez v. Procunier*, 801 F.2d 789, 793 (5th Cir. 1986). These four people were sued because of their supervisory roles, but the doctrine of *respondeat superior* does not apply in § 1983 actions. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978). Most recently, the Supreme Court recently stressed that the term supervisory liability in the context of a § 1983 lawsuit is a "misnomer" since "[e]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). The Supreme Court rejected an argument that government officials may be held liable because they merely had knowledge or acquiesced in their subordinate's misconduct. *Id.* Under § 1983, a supervisor may be held liable if

either of the following exists: (1) his personal involvement in the constitutional deprivation, or (2) sufficient causal connection between the supervisor's wrongful conduct and the constitutional violations. *Thompkins v. Belt*, 828 F.2d 298, 303-304 (5th Cir. 1987). Neither condition is satisfied with respect to any of these four supervisors.

In conclusion, the Plaintiff's claims fail to state a claim upon which relief may be granted and are frivolous in that they lack any basis in law and fact. The lawsuit should be dismissed pursuant to 28 U.S.C. § 1915A(b)(1). It is therefore

**ORDERED** that the civil rights complaint is **DISMISSED** with prejudice pursuant to 28 U.S.C. § 1915A(b)(1). All motions not previously ruled on are **DENIED**.

So **ORDERED** and **SIGNED** this **10** day of **August, 2012.**

_____
JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE